UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES HUTCHINS,

        Plaintiff,

    v.

NATIONSTAR MORTGAGE LLC, et al.,

        Defendants.

Case No. 16-cv-07067-PJH

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

    The motion of defendant Nationstar Mortgage LLC ("Nationstar") for an order dismissing the first amended complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim came on for hearing before this court on August 2, 2017. Plaintiff James Hutchins appeared by his counsel Arash Moussavian, and Nationstar appeared by its counsel Megan Kelly. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS defendant's motion.

## BACKGROUND

    In July 2004, plaintiff James Hutchins financed the purchase of real property located in Livermore, California ("the property") through a first and second combination loan, in the principal amounts of $958,400.00 ("the Loan") and $119,680.00, respectively. FAC ¶ 23 & Exh. A; Def's RJN Exh. 1. The Loan was secured by a Deed of Trust, recorded against the property, and memorialized by a promissory note, and the lender was Bank of America, N.A. ("BofA"). See FAC ¶ 23 & Exh. A. The term of the Loan ran to September 1, 2034. FAC Exh. A.

The Deed of Trust included an adjustable rate rider, providing that the initial interest rate would be 4.876%, with a possible rate change on September 1, 2009.  The period from the origination of the loan through September 1, 2009, was an "interest only" period.  Thereafter, during the "amortization" period, the monthly payment would be calculated based on the changed interest rate plus an amount sufficient to repay the capital principal through the life of the loan.  See FAC Exh. A.

Plaintiff alleges that in late 2008, he and his wife were "feeling the effects of the recession," and he began calling BofA, asking about a loan modification.  FAC ¶ 24.  He asserts that July 2009, he submitted a complete "loan modification package" to BofA; that he was told he had to be 90 days late (on the payments) before a loan modification could be considered; that he was advised to stop paying his mortgage; and that his last payment on the Loan was made on July 10, 2009.  FAC ¶ 24.

Plaintiff alleges that on January 5, 2010, he was informed by BofA that his loan modification application was denied.  FAC ¶ 25.  He claims, however, that the "information" had been incorrectly "inputted" in the system, and was then corrected and resubmitted, and asserts that on March 3, 2010, he was informed that his application was "conditionally approved."  FAC ¶ 25.  He claims that he "proceeded with the loan modification process for three years until the loan servicing was transferred to Nationstar in November of 2013;" and that he "never received any documentation or information about being denied in his January 10, 2010, submission."  FAC ¶ 25.

On April 4, 2012, plaintiff "experienced significant hardship" when he lost his job of 25 years, without advance notice, which he claims caused him to "fall further behind on the mortgage payments," FAC ¶ 27 (which payments, as alleged in FAC ¶ 24, he had not been making since July 2009).  Plaintiff claims that after his loan was "switched to Nationstar" – which he alleges occurred in November 2013, FAC ¶ 25, he obtained gainful employment and his income returned, FAC ¶ 28.

Plaintiff asserts that as required by the Homeowners Bill of Rights ("HBOR"), Nationstar provided him with a single point of contact ("SPOC") – an individual by the

2

name of Ms. Karp – but claims that he was never able to reach her.  FAC ¶¶ 29-31, 84.

He alleges that he tried to follow up with Ms. Karp as to the "ongoing loan modification

review that had been submitted to prior servicer BofA, and the status of that review that

was ongoing during and after the transfer of servicing to Nationstar."  FAC ¶ 30.

However, he contends that he received no response to emails sent to Ms. Karp on

December 9, 2014, and December 18, 2014.  FAC ¶ 30.

Plaintiff sent Ms. Karp another email on January 7, 2015, and claims he received a

response on January 9, 2015, stating, "You are welcome to contact Nationstar costumer

[sic] service directly pertaining to your account with us."  FAC ¶¶ 30-31.  He alleges that

although he was informed that Ms. Karp was his SPOC, she "did not fulfill any of her

duties under the code," and that he was thereafter "unable to contact anyone at

Nationstar familiar with his loan."  FAC ¶ 31.  He asserts that in July 2015, he sent a letter

to Nationstar inquiring about the status of the "ongoing loan modification review," but that

"[t]here was no written response from Nationstar on that issue," although Nationstar

"continued to send him mortgage statements on a monthly basis."  FAC ¶ 32.

A Notice of Default and Election to Sell Under Deed of Trust was recorded against

the property on November 6, 2015.  FAC ¶ 33 & Exh. B; Def's RJN Exh. 6.  Plaintiff

alleges that the Notice contained a "false declaration" pursuant to California Civil Code

§ 2923.55(f), signed on January 23, 2015, averring that Nationstar had contacted plaintiff

to assess his financial situation and to explore options to avoid foreclosure, and that 30 or

more days had passed since those efforts were satisfied.  FAC ¶ 33.  Plaintiff claims he

had no such contact or conversation with Nationstar.  FAC ¶ 33.

Plaintiff asserts that on December 10, 2015, after receiving the Notice of Default,

he called Nationstar and talked with "Faye," who stated that "the records" showed that a

loan modification application was submitted, and under review, and that there were no

documents showing if it was approved or denied.  FAC ¶ 34.  Plaintiff claims that "[t]his

referred to the loan modification submission that he had submitted to Bank of America,"

and asserts that the review was thus "ongoing and continuing when the loan was

United States District Court
Northern District of California

United States District Court
Northern District of California

transferred to Nationstar." FAC ¶ 34. Plaintiff claims he informed "Faye" that the filing of the Notice of Default violated the dual-tracking laws, and "Faye" said she would "escalate" the issue. FAC ¶ 34.

Plaintiff asserts that he called Nationstar on December 15, 2015, and spoke with "Monique," who informed him that there had been no response from "escalation[;]" and that he contacted Nationstar on January 5, 2016, and spoke to "Icy," who advised him that the loan modification was "denied." FAC ¶ 35. Plaintiff asserts that this "verbal denial" was improper because "the Code" requires that denials be in writing. FAC ¶ 35. Thereafter, he alleges, he again contacted Nationstar to inquire about a loan modification, and on or around January 22, 2016, submitted a "complete loan modification application." FAC ¶ 36. This application was allegedly denied on March 22, 2016, "due to Negative NPV." FAC ¶ 37.

On April 21, 2016, plaintiff's counsel Joseph R. Manning, Jr., wrote a letter to Nationstar appealing the March 22, 2016 denial. FAC ¶ 38 & Exh. C. Mr. Manning stated in the April 21, 2016, letter that according to the denial letter (not attached), plaintiff "was 'evaluated for mortgage payment assistance based on the eligibility requirements of Wells Fargo Bank, N.A.' but was declined for HAMP Tiers I and II due to an ineligible mortgage and for a standard modification due to the borrower's 'Negative NPV.'" FAC Exh. C. He added, "[a]s you know, Cal. Civil Code Section 2923.6(f)(3) requires that if a loan modification application is denied due to a net present value calculation, 'a statement that the borrower may obtain all of the inputs used' by written request, must be included in the denial letter[,]" but that the denial letter did not include that statement. FAC Exh. C.

Mr. Manning stated further that plaintiff disputed the value in the denial letter for monthly gross income (too low) and property value (too high, considering repairs that were needed). Finally, he stated that in his opinion, plaintiff could qualify for a 2%, 40-year term loan, and requested that Nationstar provide an updated analysis and review based on the information provided in the letter, as well as information regarding all

4

available loan modification options.  <u>See</u> FAC Exh. C.

On May 27, 2016, Nationstar recorded a Notice of Trustee's Sale.  FAC ¶ 39 & Exh. D; Def's RJN Exh. 7.  Plaintiff claims that the recording of this Notice violated California Civil Code § 2923.6, which prohibits recording a Notice of Trustee's Sale while an appeal of a denial of a loan modification is pending.  <u>See</u> FAC ¶ 39.  Plaintiff alleges that on May 27, 2016, his attorneys submitted a "Notice of Error" ("NOE") regarding this violation, but that Nationstar did not rescind the Notice of Sale or the November 2015 Notice of Default.  FAC ¶ 40.  Plaintiff also claims that he had a "sharp change in circumstances" in mid-2016, but that he was "never offered a fair opportunity to be evaluated" and was never evaluated for a "foreclosure prevention alternative."  FAC ¶ 41.

In the original complaint, plaintiff cited to a letter written by his attorney Mr. Manning to Nationstar on September 6, 2016, stating that a written denial of the loan modification request was never received – only a "supplemental follow-up."  <u>See</u> Orig. Cplt ¶ 50 & Exh. C.[1]   This letter begins, "In a letter dated August 8, 2016, Nationstar . . . denied the above-referenced borrower [Hutchins] for a loan modification.  This letter shall serve both as an appeal and a formal request for additional information regarding the reason or reasons for the denial."  Orig. Cplt Exh. C.

According to the September 6, 2016, letter, Nationstar's denial letter stated that plaintiff was "not eligible for a loan modification due to negative NPV and that Nationstar is unable to offer a HAMP modification, subject to investor restrictions that were used in the NPV evaluation."  Orig. Cplt Exh. C.  However, the letter goes on, "we never received a written denial letter, as was claimed in the August 8, 2016 letter. . . . Without the separate non-approval notice, which was never received by our client, we cannot intelligibly understand the process used to make this determination and the claimed investor restrictions."  Orig. Cplt Exh. C.  Mr. Manning proposed that Nationstar "forgive or defer $350,000 of the arrears and provide a 2%-3% interest rate for a 40 year term."

---

[1]   The September 6, 2016, letter was attached to the original complaint, but is not attached to the FAC.

United States District Court
Northern District of California

United States District Court
Northern District of California

That, he asserted, would make it possible for plaintiff to qualify for a loan he would be able to "continue." Orig. Cplt Exh. C.

Plaintiff alleged further in the original complaint that while his counsel sent NOEs to Nationstar in May 2016, Nationstar did not respond until October 6, 2016. See Orig. Cplt ¶¶ 63-64 & Exh. N (Oct. 6, 2016, letter from Nationstar to Mr. Manning, in response to Mr. Manning's letter received by Nationstar on September 7, 2016).[2] Plaintiff asserted in the original complaint that "since there was no denial letter," he had no time to appeal, and as of the date of the complaint, he did not "know what happened to other loan modification submissions, written denials, and were not provided any information on how to appeal or their procedures for appealing." Orig. Cplt ¶ 64.

What Nationstar's October 6, 2016, letter actually said was that Nationstar had reviewed the account and determined that a "printing error" had occurred, which resulted in the actual denial letter not being generated. Nationstar added that it had manually generated the denial letter, and was enclosing it with the October 6, 2016, letter, with an apology for the delay. Orig. Cplt Exh. N. at 1. Nationstar went on to explain that after reviewing the account, it "determined that the denial for modification assistance on July 29, 2016, was valid," adding that the account was determined to be ineligible for HAMP Tier I and HAMP Tier II because the unpaid principal balance of the Loan exceeded the program's limit of $729,750. Id.

In response to plaintiff's counsel's claim that Nationstar had failed to review plaintiff for alternative modifications, Nationstar responded that plaintiff was not reviewed for HAMP "due to the aforementioned guidelines" but that he was in fact reviewed for the remaining available modification options. Id. However, the Standard Modification was denied due to negative Net Present Value (NPV) – an analysis that takes into account only gross monthly income and property value. Id. Nationstar then went on to explain in detail how it calculated net monthly income, and stated that the value of the property at

---

[2] The October 6, 2016, letter was attached to the original complaint, but is not attached to the FAC.

that time was $1.4 million.  Id. at 2.  Nationstar also provided information regarding how plaintiff could challenge the stated property value used in this calculation.  Id.

Nationstar added that there were other "loss mitigation alternatives" that might be available, including reinstatement (requiring payment of the total amount delinquent), deed-in-lieu (voluntarily transferring the property to Nationstar to satisfy the debt and avoid foreclosure), and pre-foreclosure/short sale (listing the property for sale and acceptance of sale proceeds by Nationstar in exchange for release of lien, even if less than amount owed).  Id. at 2.  Nationstar provided a statement of the amount owing (and delinquent); and advised, "If you have any questions regarding payment assistance or the status of the account, you can contact Brenda Mansfield, the assigned Single Point of Contact (SPOC), directly[.]"  Id.  Nationstar also provided the phone number of the Loss Mitigation Department, and the phone number and contact information for the person writing the letter.  Id. at 3.

Plaintiff filed the original complaint in Alameda County Superior Court on November 2, 2016.  The case was removed to this court on December 9, 2016.  Plaintiff asserted nine causes of action.  On March 24, 2017, Nationstar filed a motion to dismiss, which was granted in an order issued on May 12, 2017 (the "Order").  The court granted leave to amend as to five causes of action only – (1) dual-tracking in violation of Cal. Civ. Code § 2923.6; (2) failure to provide an SPOC, in violation of Cal. Civ. Code § 2923.7; (3) unfair, unlawful, and fraudulent business acts and practices, in violation of Cal. Bus & Prof. Code § 17200; (4) negligence, and (5) negligent misrepresentation.

Plaintiff filed the FAC on June 7, 2017, asserting the five causes of action listed above.  Plaintiff also alleges that because of the "substantial arrearages," which include unspecified "unnecessary fees added to the loan balance," he has not been able to cure the default, and he has been unable to negotiate a mortgage payment he can afford. FAC ¶ 42.  He remains in possession of the property, and concedes no Trustee's sale has occurred, but he asserts that the Notice of Default has not been rescinded, so "further foreclosure proceedings are anticipated."  FAC ¶ 43.  He contends that "all

foreclosure activity on the property must cease until his "initial application" is fairly and properly evaluated and a written denial is mailed. FAC ¶ 44. Nationstar now seeks an order dismissing the FAC.

**DISCUSSION**

A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief.'" Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the

document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).  The court may consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of L.A., 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of a the plaintiff's claims.  See No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

B.    Defendant's Motion

Nationstar argues that each of plaintiff's five causes of action should be dismissed for failure to state a claim, and that the entire complaint should be dismissed with prejudice because plaintiff has been given leave to amend and failed to correct the deficiencies in the prior complaint as instructed by the court.

1.    California Civil Code § 2923.6

The first cause of action asserts that Nationstar violated Civil Code § 2923.6, which is part of the HBOR.  Section 2923.6 limits the ability of a lender to issue a notice of default or a notice of sale, or conduct a trustee's sale on a "first lien loan modification" until one of three conditions occurs:  (1) the mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period has expired; (2) the borrower does not accept an offered first lien loan modification within fourteen days of the offer; or (3) the borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.  See Cal. Civ. Code § 2923.6(c)(1)-(3).

Another section of the HBOR, Civil Code § 2924.12, provides that there can be no liability for violation of specified sections of the HBOR, including § 2923.6, where the alleged violation has been "corrected and remedied" prior to the recordation of a trustee's deed upon sale.  Cal. Civ. Code § 2924.12(c).  Additionally, even where there is liability, the remedies are limited, depending on whether a trustee's deed upon sale has been

9

recorded.  See Cal. Civ. Code § 2924.12(a)(1), (b) (Where a trustee's deed upon sale has not been recorded, a borrower is limited to seeking an injunction to enjoin an improper foreclosure. Only where a trustee's deed upon sale has been recorded, can a borrower seek damages for the violation.).

In this cause of action, plaintiff alleges that he has never "been fairly evaluated for a foreclosure prevention alternative," and that he has not "been afforded a fair opportunity to be evaluated for a foreclosure prevention alternative."  FAC ¶ 72; see also FAC ¶ 77.  He asserts that "[t]he loan modification which was started with Bank of America then transferred to Nationstar was not denied in writing prior to Nationstar wrongfully recording the Notice of Default" on November 16, 2015, which he claims constituted "dual tracking."  FAC ¶¶ 72, 76.  In addition, plaintiff alleges that Nationstar "wrongfully recorded" the Notice of Trustee's Sale before he received the result of his appeal of the loan modification denial.  FAC ¶ 73.

Further, plaintiff contends that he has experienced a "change in circumstances" which "necessitates another review" under § 2923.6(g), which provides that a lender must evaluate a loan modification application when the borrower has experienced a "change in circumstances" which might make it possible for him to qualify.  FAC ¶ 73.  He asserts that all foreclosure activity on the property must cease until Nationstar has conducted this further evaluation and has mailed a written denial.  FAC ¶ 74.  Plaintiff claims that Nationstar "has been notified of [his] material financial change."  FAC ¶ 77.

Nationstar argues that despite having been given an opportunity to amend his complaint, plaintiff still has not alleged any material violation of the § 2923.6, and has not pled any facts showing how the purported violation of § 2923.6 has injured him.  For example, Nationstar asserts, plaintiff has not alleged facts showing that he submitted a complete loan modification application to Nationstar before the Notice of Default was recorded in November 2015.  Nationstar notes that the only application plaintiff claims to have been submitted prior to the recording of the Notice of Default was an application submitted to the prior servicer, BofA, in July 2009, several years before the effective date

1  of the HBOR.

2  Moreover, Nationstar asserts, documents incorporated into the original complaint

3  (but omitted in the FAC) demonstrate that Nationstar reviewed plaintiff for a loan

4  modification in or about July 2016.  As set forth in the October 6, 2016 letter, appended to

5  the original complaint as Exhibit N, Nationstar conducted a modification review and

6  issued a denial on or about August 8, 2016.  Plaintiff appealed the denial, and

7  Nationstar's October 6, 2016, letter  affirmed that the denial for modification assistance

8  was valid.  See Orig Cplt. Exh. N.  It is undisputed that no foreclosure sale has occurred

9  to date.  For this reason, Nationstar argues, any alleged violation has been "corrected

10  and remedied prior to the recordation of a trustee's deed upon sale."  Cal. Civ. Code

11  § 2924.12(c).

12  With regard to plaintiff's claim that he was never fairly evaluated for a foreclosure

13  prevention alternative, Nationstar argues that the July 2016 review and subsequent

14  denials also refute plaintiff's allegations that no review was conducted and establish that

15  Nationstar complied with the law.  See Orig. Cplt Exh. N.  Moreover, Nationstar asserts,

16  plaintiff's allegations demonstrate that he has already received all that he may be entitled

17  to under HBOR – i.e., postponement of the foreclosure sale while loss mitigation efforts

18  are explored.

19  In opposition, plaintiff asserts that the FAC alleges that the Notice of Default was

20  recorded prior to any written denial of loan modification, and that the Notice of Trustee's

21  Sale was recorded during the time that plaintiff was appealing the loan modification

22  denial – both of which are violations of § 2923.6.  Plaintiff asserts that the remedy for

23  such a violation is for Nationstar to rescind the Notice of Default, which it has not done.

24  As for Nationstar's argument that any violation is not "material," or has been remedied,

25  plaintiff responds that whether a violation is "material" is a question of fact and that every

26  violation that undermines the purpose of the HBOR is material.

27  The court finds that the motion must be GRANTED.  Plaintiff alleges no facts

28  showing that he submitted a complete loan modification application to Nationstar before

1   the Notice of Default was recorded on November 16, 2015. The only application

2   allegedly submitted before the recording of the Notice of Default was submitted to BofA in

3   July 2009.

4       As for plaintiff's contention that the proper manner to resolve the dual tracking

5   claim is to require Nationstar to rescind the Notice of Default, the court finds that

6   argument to be without merit. As indicated above, § 2924.12 clearly provides that where,

7   as here, no trustee's deed upon sale has been recorded, the only remedy available for a

8   violation of § 2923.6 (and other sections of the HBOR) is an injunction to enjoin an

9   improper foreclosure. Cal. Civ. Code § 2924.12(a)(1). Moreover, there can be no liability

10  where the alleged violation has been "corrected and remedied" prior to the recordation of

11  a trustee's deed upon sale. Cal Civ. Code § 2924.12(c).

12      Plaintiff cites Hestrin v. Citimortgage, Inc., 2015 WL 847132 at *3 (C.D. Cal. Feb.

13  25, 2015), in support of his argument that the court must order Nationstar to rescind the

14  Notice of Default. In that case, which does not support plaintiff's argument, the court

15  rejected the defendant's contention that it was protected by the safe harbor provision in

16  § 2924.12(c), because there was no allegation that the defendant had corrected or

17  remedied its violation. Id. The court added that "the possibility for remediation does not

18  render an ongoing breach moot[,]" which the court noted could be accomplished by the

19  rescinding of the Notice of Default. Id.

20      Here, by contrast, the allegations in the FAC and documents attached to the FAC

21  and the original complaint show that Nationstar evaluated and denied plaintiff's request

22  for a loan modification prior to the recording of any trustee's deed upon sale. Plaintiff

23  himself has acknowledged that Nationstar invoked the safe-harbor, completing a

24  subsequent loan modification review in or about July 2016, conducting a modification

25  review and issuing a denial letter on August 8, 2016. See Orig. Cplt Exh. N. Plaintiff

26  appealed the denial, and Nationstar affirmed that the denial was valid in the October 6,

27  2016 letter. See id.

28      Thus, as Nationstar points out, while rescinding a Notice of Default might be one

12

way to cure a violation, it is not the only way.  Here, because no trustee's sale has occurred, and because Nationstar has denied plaintiff's application for a loan modification, any alleged violation of § 2923.6 has been corrected and remedied prior to the recordation of a trustee's deed upon sale.  Because plaintiff has failed to amend the dual-tracking claim as instructed by the court in the May 12, 2017, Order, the court finds that further leave to amend would be futile.  The dismissal is with prejudice.

Finally, plaintiff asserts that Nationstar failed to examine his application based on his "changed circumstances," in violation of Civil Code § 2923.6(g).  Under § 2923.6(g),

> the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already . . . been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

Cal. Civ. Code § 2923.6(g) (emphasis added).

To seek a review under "changed circumstances," the plaintiff/borrower must allege a specific change in financial circumstances that was documented and submitted to the mortgage servicer, rather than providing a "barebones explanation." Gilmore v. Wells Fargo Bank N.A., 75 F. Supp. 3d 1255, 1264-65 (N.D. Cal. 2014) (internal quotations omitted).  For example, informing the lender of a $2,400 salary increase from new employment and supplying supporting documentation might be sufficient at the pleading stage, see Vasquez v. Bank of America, N.A.. 2013 WL 6001924, at *8 (N.D. Cal. Nov. 9, 2013), but a letter from counsel to the lender stating the amount of the borrowers' gross disposable household income, and stating generally that the borrowers had "also been faced with an increase in their expenses," with no supporting details or documentation, would be insufficient, see Williams v. Wells Fargo Bank, N.A., 2014 WL 1568857 at *5 (C.D. Cal. Jan. 27, 2014).

Here, plaintiff has not alleged that the submitted a request to Nationstar, with all the information necessary to show changed circumstances.  His conclusory, barebones

allegation that he "had a sharp change in circumstances, in or around the middle of 2016 [but] was never afforded a fair opportunity to be evaluated, and . . . was never evaluated, for a foreclosure prevention alternative," FAC ¶ 41, is insufficient to state a claim under § 2923.6(g). As was true with the original complaint, the allegations in the FAC fall well short of pleading a specific change in circumstances, and also fail to plead facts showing when plaintiff advised Nationstar of this purported change and what information he claims to have provided to Nationstar at that time. See, e.g., Ivey v. JP Morgan Chase Bank, N.A., 2016 WL 4502587 at *4 (N.D. Cal. Aug. 29, 2016).

In the May 12, 2017 order re the motion to dismiss the original complaint, the court stated, "To the extent plaintiff is attempting to invoke § 2923.6(g), he must allege facts showing a specific change in financial circumstances that was documented and submitted to Nationstar." Order at 2. Plaintiff has not complied with these instructions. Accordingly, the court finds that further leave to amend would be futile. The § 2923.6(g) claim is dismissed with prejudice.

2.      California Civil Code § 2923.7

The second cause of action alleges that Nationstar violated Civil Code § 2923.7, which is also part of the HBOR. Section 2923.7 provides that where a borrower requests a foreclosure prevention alternative, "the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a). The SPOC may be an individual or a team of personnel, "each of whom has the ability and authority to perform the responsibilities" described in the statute. Cal. Civ. Code § 2923.7(c).

The borrower's SPOC is responsible for, among other things, "[c]ommunicating the process by which a borrower may apply for an available foreclosure prevention alternative," "coordinating receipt of all [associated] documents," "notifying the borrower of any missing documents necessary to complete the application," "[h]aving access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative," and "[h]aving

14

access to individuals with the ability and authority to stop foreclosure proceedings when necessary."  Cal. Civ. Code § 2923.7(b)(1)-(5).

Plaintiff asserts that Nationstar violated § 2923.7 by failing to provide him with an SPOC to accurately and adequately inform him of the current status of the foreclosure prevention alternative and ensure that he was considered for all available loss mitigation options to avoid foreclosure.  Plaintiff contends that he was "assigned" to Ms. Karp, but that she failed to perform her duties and was not part of a team who performed such duties.  FAC ¶ 87.

Plaintiff alleges that Ms. Karp did not respond to his requests when he attempted to reach her.  FAC ¶ 29.  He claims that he sent emails to Ms. Karp on December 9, 2014, December 18, 2014, and January 7, 2015, without response, although he also alleges that she provided him with a response on January 9, 2015.  FAC ¶ 30.  He asserts that he also spoke to "Faye," "Monique," and "Icy" at Nationstar.  FAC ¶¶ 34-35.  In addition, he was later "able to reach other representatives," although he claims they provided him with "inconsistent information."  FAC ¶ 87.

Nationstar argues that this cause of action should be dismissed for failure to state a claim, because while plaintiff alleges that Nationstar failed to assign him an SPOC, he also concedes that Nationstar did assign an SPOC – Ms. Karp – who did at some point contact him, and he also alleges that he spoke to other Nationwide representatives about the status of his application.  In addition, Nationstar notes, Exhs. C and N to the original complaint reference plaintiff's contacts with Nationstar (which Nationstar refers to as "loss mitigation reviews").

Moreover, Nationstar asserts, as is true with the claim under § 2923.6, even if plaintiff had pled a violation of § 2923.7, he alleges no facts showing a material violation of the HBOR that was not remedied by the July 2016 loan modification review and denial of his loan modification application.

In opposition, plaintiff asserts that he has adequately alleged a violation of § 2923.7 by alleging that while Nationstar designated Ms. Karp as his SPOC, she failed

15

to respond to him on many occasions, and then told plaintiff to contact Nationstar customer service directly. In addition, he asserts, he received conflicting information from the representatives he did talk to. He was told by Faye on December 10, 2015, that the application was not denied; but he was told by Icy on January 5, 2015, that the application was denied. Plaintiff contends that a servicer who provides an SPOC who in turn provides incorrect information, or who fails to follow up with a loan modification request, violates § 2923.7.

The court finds that the motion to dismiss this cause of action must be GRANTED. Plaintiff has pled no claim against Nationstar for failure to provide an SPOC because as explained above, Nationstar has reviewed and denied plaintiff's application for a loan modification, and no trustee's deed upon sale has been recorded. Under those circumstances, § 2924.12(c) provides that there can be no liability for violation of specified sections of the HBOR, including § 2923.7.

Furthermore, a violation of § 2923.7 is actionable only when that violation is material. A material violation is one where "the alleged violation affected a plaintiff's loan obligations or the modification process." Cornejo v. Ocwen Loan Servicing, LLC, 151 F.Supp.3d 1102, 1113 (E.D. Cal. 2015). Here, based on the exhibits attached to the original complaint, Nationstar conducted a loss mitigation review, plaintiff's application has been processed, and plaintiff was given an opportunity to appeal the denial. Plaintiff has not explained how the alleged denial of his right to an SPOC in any way affected his loan obligations or the modification process.

3. California Business & Professions Code § 17200

The third cause of action asserts that Nationstar violated Business & Professions Code § 17200 ("UCL"), which prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

In this cause of action, plaintiff alleges, first, that Nationstar engaged in "unlawful" behavior. FAC ¶ 102. He asserts that Nationstar's violations of HBOR "constitute a pattern and practice of unlawful corporate behavior." FAC ¶ 100. He also alleges that

16

Nationstar omitted to disclose "the nature of the charges and fees assessed" on his Loan, FAC ¶ 97-98, and that these "omissions of material facts" constitute "unlawful" business practices because they violate 18 U.S.C. § 1341 (mail fraud), § 1344 (bank fraud), and § 1962 (RICO), as well as California Civil Code § 1572 (actual fraud), § 1573 (constructive fraud), § 1709 (deceit/damages), § 1710 (deceit defined), and § 1711 (deceit on the public) "to name a few." FAC ¶ 102.

Second, plaintiff alleges that Nationstar's violations of HBOR "were against public policy, as the legislature enacted the [HBOR] as an emergency act, to slow the foreclosure process so that foreclosure could be avoided." FAC ¶ 100. He asserts that these "acts and practices" constitute "unfair" business acts under § 17200 because they "offend public policy and are substantially injurious to [p]laintiff and all consumers[;]" and that they insufficiently "outweigh the substantial harm to [p]laintiff, other consumers, and potential homeowners." FAC ¶ 103.

In addition, plaintiff alleges that Nationstar engaged in "deceptive business practices with respect to mortgage loan servicing, foreclosing of residential properties and related matters," by committing violations of HBOR; by sending him "false and misleading advertisements" misrepresenting the availability of options to save his home and leading him to believe he could save his home in a matter of days if he just called; by failing to sufficiently train loss mitigation staff and failing to maintain adequate systems for tracking borrower documents; by instituting improper foreclosure proceedings to generate inflated and unwarranted default-related fees; by misrepresenting the foreclosure status of his property; by concealing the true character, quality, and nature of "their" assessment of marked-up fees against his accounts; and by making false representations and false promises designed to deceive him into thinking he was safe from foreclosure and was working with an SPOC when that was not true. FAC ¶ 95.

Third, plaintiff asserts that Nationstar engaged in "fraudulent" business acts and practices by concealing material facts, and that "[t]his concealment was made with knowledge of its effect, and was done to induce [p]laintiff to pay the marked-up and/or

1   unnecessary fees for default-related services. FAC ¶ 96. Plaintiff also claims that

2   Nationstar omitted an itemization of all the charges and fees assessed on his Loan, and

3   that it imposed charges and fees that were never incurred. FAC ¶ 97.

4   Nationstar argues that the § 17200 claim should be dismissed for failure to state a

5   claim. As an initial matter, Nationstar contends that plaintiff lacks standing under the

6   UCL, because a § 17200 claim must be brought "by a person who has suffered injury in

7   fact and has lost money or property as a result of the unfair competition," see Cal. Bus. &

8   Prof. Code § 17204, and plaintiff has not pled facts sufficient to meet that requirement.

9   Under the UCL, a plaintiff must show that her injury came "as a result of' the unfair

10  competition." Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 326 (2011) (quoting Cal.

11  Bus. & Prof. Code § 17204). The purpose of this provision is "to confine standing to

12  those actually injured by a defendant's business practices." Id. 321. To satisfy this

13  standing requirement, a plaintiff must "(1) establish a loss or deprivation of money or

14  property sufficient to qualify as injury-in-fact, i.e., economic injury, and (2) show that the

15  economic injury was the result of, i.e., caused by, the unfair business practice or false

16  advertising that is the gravamen of the claim." Id. at 322; see also Rubio v. Capital One

17  Bank, 613 F.3d 1195, 1203-04 (9th Cir. 2010).

18  Nationstar asserts that plaintiff has not pled any economic injury, and indeed,

19  admits that he made the last payment on the Loan on July 10, 2009. See FAC ¶ 24.

20  Moreover, Nationstar argues, even if plaintiff had alleged that he lost money or property,

21  he has not pled any nexus between the alleged misconduct and his alleged injury.

22  Indeed, Nationstar asserts, it is clear that any alleged injury was caused by plaintiff's

23  undisputed failure to make his loan payments for the past eight years.

24  In opposition, plaintiff asserts that both the imposition of marked-up and

25  unnecessary fees and the threat to foreclose are sufficient to establish standing to assert

26  a UCL claim, and he argues that he has thus shown injury-in-fact. Some courts have

27  held that both of these can qualify under certain circumstances as injury-in-fact. See,

28  e.g., Sullivan v. Washington Mut. Bank, FA, 2009 WL 3458300, at *4 (N.D. Cal. Oct. 23,

United States District Court
Northern District of California

2009); see also Galang v. Wells Fargo Bank, N.A., 2017 WL 1210021 at *6 (N.D. Cal. Apr. 3, 2017); Stokes v. CitiMortgage, Inc., 2014 WL 4359193 at *12 (C.D. Cal. Sept. 3, 2014); Ellis v. J.P. Morgan Chase & Co., 950 F.Supp. 2d 1062, 1086 (N.D. Cal. 2013).

Here, however, the vague and conclusory allegations in the FAC regarding "marked-up and unnecessary fees for default-related services" – none of which relate to plaintiff or to his Loan – are not sufficient to show that plaintiff lost money or property, particularly given that plaintiff alleges no facts showing that he has paid any fees. Nor has plaintiff pled a single fact showing that unlawful fees have been imposed. While in theory he might be able to allege economic injury based on such fees and charges, see, e.g., Ellis, 950 F.Supp. 2d at 1086, he does not allege he has actually paid any such unlawful fees and charges (indeed, he alleges he has made no payment at all since July 2009), nor has he identified any of the fees and charges allegedly assessed to his account or explained why they are excessive or unlawful.

As for the alleged threat of foreclosure, any such threat would be a direct result of plaintiff's admitted failure to make his loan payments for the past eight years. See FAC ¶ 24. Where a plaintiff's foreclosure results from his having defaulted on his loan prior to the defendant's allegedly wrongful acts, he cannot state a claim under the UCL. See, e.g., Morgan v. Aurora Loan Servs., LLC, 646 Fed. Appx. 546 (9th Cir. 2016); Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal. App. 4th 497, 523 (2013).

In addition, the Notice of Trustee's Sale was recorded on May 26, 2016 (with the sale date set for June 20, 2016), but no sale went forward, and plaintiff does not allege that any further notice of sale has been recorded. Under Civil Code § 2924g, a notice of sale expires after 365 days (regardless of any postponements). Since the notice has expired, foreclosure cannot be "imminent." Accordingly, the court finds that plaintiff has not established that he has standing under the UCL.

Nationstar also contends that the FAC fails to plead facts showing any unlawful, unfair, or fraudulent business act or practice; and furthermore that plaintiff's entire claim sounds in fraud, but he has not alleged fraud with particularity.

1    In opposition, plaintiff contends that the FAC presents a valid claim under each of

2    the three "prongs" of § 17200.  He argues that he has presented a valid claim under the

3    "unlawful" prong of the UCL "based on [d]efendants' various violations of the HBOR,

4    discussed above and other violations of the law as stated in the Complaint."

5    Plaintiff asserts that the alleged violations of the HBOR also amount to "unfair"

6    conduct under the UCL.  He contends that this "unethical, oppressive, and injurious

7    conduct would substantially injure considers [sic] without any countervailing benefit to

8    considers [sic] or competition."  He also claims that the alleged violations constitute

9    "conduct against legislatively stated public policy as the purpose of [the HBOR] is to

10    ensure that 'borrowers are considered for, and have a meaningful opportunity to obtain,

11    available loss mitigation offered by or through the borrower's mortgage servicer'" (citing

12    Cal. Civ. Code § 2923.4(a)).

13    Finally, plaintiff argues that he has pled facts sufficient to support a claim under

14    the "fraudulent" prong.  He points to FAC ¶ 95, where he alleges that Nationstar engaged

15    in "deceptive business practices" by engaging in "dual tracking," by recording a false

16    declaration in violation of Civil Code § 2923.55, by failing to review his financial packet

17    despite his material change in circumstances; by recording the Notice of Sale in May

18    2016 prior to providing any result of the appeal of the loan modification denial; by

19    providing an SPOC who was non-responsive; and by charging fees that were

20    unnecessary and unreasonable.

21    The court finds that plaintiff has not alleged facts sufficient to show an "unlawful,"

22    an "unfair," or a "fraudulent" business act or practice, and that the motion to dismiss this

23    cause of action must GRANTED.  The "unlawful" prong of the UCL incorporates

24    "violations of other laws and treats them as unlawful practices." Cel-Tech Comms., Inc.

25    v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999); see also Walker v. Countrywide

26    Home Loans, Inc., 98 Cal. App. 4th 1158, 1169 (2002).  To state a claim under the

27    "unlawful" prong of the UCL, a plaintiff may allege the commission of any act "forbidden

28    by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-

made." <u>Saunders v. Sup. Ct.</u>, 27 Cal. App. 4th 832, 838-39 (1994).

Plaintiff bases his claim under the "unlawful" prong both on the alleged violations of HBOR (as to which he has not stated a claim) and on a laundry list of federal and state statutes (which are not pled as causes of action and as to which he has not alleged facts sufficient to state a claim). Thus, the FAC does not plead the predicate legal violation which is necessary to state a claim under the "unlawful" prong of the UCL.

With respect to the "unfair" prong, a business act or practice is "unfair" when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." <u>Cel-Tech</u>, 20 Cal. 4th at 187; <u>see also</u> <u>Lueras v. BAC Home Loans Servicing, L.P.</u>, 221 Cal. App. 4th 49, 81 (2013).

Here, to the extent it is even comprehensible, plaintiff's claim regarding "unfair" business practices is premised on vague allegations of the "public policy" that underlies the HBOR. However, he has not connected that public policy to any action taken by Nationstar (apart from the claims that Nationstar violated § 2923.6 and § 2923.7). This portion of the claim also appears to sound in fraud, based on the allegations of "deception," but the FAC fails to state "with reasonable particularity" the facts to support this claim. <u>See</u> <u>Khoury v. Maly's of Cal., Inc.</u>, 14 Cal. App. 4th 612, 619 (1993). In addition, to the extent that the "unfair" practices claim sounds in fraud. Rule 9(b) must also be satisfied, which is not the case here. <u>See</u> <u>Kenery v. Wells Fargo, N.A.</u>, 2015 WL 5138635, at *2 (N.D. Cal. Sept. 1, 2015).

As for the "fraudulent" prong, the UCL requires "a showing that members of the public are likely to be deceived" by the allegedly fraudulent practice. <u>Prakashpalan v. Engstrom, Lipscomb and Lack</u>, 223 Cal. App. 4th 1105, 1134 (2014). Additionally, however, claims under the "fraudulent" prong of the UCL must be pled "with particularity" as to "the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125-26 (9th Cir. 2009). The plaintiff must set forth "the

1    time, place, and specific content of the false representations as well as the identities of

2    the parties to the misrepresentation." <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 553 (9th

3    Cir. 2007) (internal quotation marks omitted).

4         Here, as with the claim under the "unfair" prong, the alleged "fraudulent" conduct

5    is based either on the purported violations of the HBOR (which claims are not adequately

6    pled, as explained above) or on vague and non-specific claims of "deceit" which are not

7    supported by any particularized facts in the FAC. <u>See</u>, <u>e.g.</u>, FAC ¶¶ 95, 116.  Plaintiff

8    has not satisfied the Rule 9(b) requirement and consequently, fails to assert a cause of

9    action under the "fraudulent" prong of the UCL.

10        4.    Negligence

11        In the fourth cause of action for negligence, plaintiff alleges that Nationstar

12   breached its duty of care to him in the servicing of his Loan.  FAC ¶ 116.  Plaintiff asserts

13   that Nationstar had a duty to use reasonable care to maintain proper and accurate loan

14   records, and "discharge and fulfill the other incidents attendant to the maintenance,

15   accounting, and servicing of loan records," including keeping an accurate accounting of

16   plaintiff's payments, credits, and debits; disclosing to plaintiff the status of any foreclosure

17   actions taken by defendants; refraining from taking any action against plaintiff that they

18   did not have legal authority to do; providing plaintiff with all relevant information regarding

19   the Loan; and maintaining proper documentation of client status of legal holds and

20   restrictions on communications with clients.  <u>See</u> FAC ¶ 110.

21        Plaintiff asserts that Nationstar "stepped outside its normal role as lender and

22   servicer and assumed additional responsibilities and duties when it undertook efforts to

23   engage in loss mitigation review and modify loans," including his Loan.  FAC ¶ 111.

24   These "additional responsibilities" allegedly included the "proper implementation of

25   available foreclosure prevention alternatives" and following the duties set forth in the

26   HBOR, with its provisions against dual-tracking, and provisions implementing an SPOC,

27   so that plaintiff would be fairly and properly evaluated for a suitable foreclosure

28   prevention alternative.  FAC ¶ 112.

Plaintiff alleges further that in taking or in failing to take "the actions alleged above," defendants breached their duty of care to plaintiff in the servicing of his Loan. See FAC ¶ 116 (listing ways Nationstar allegedly breached its duty of care to plaintiff). The list in FAC ¶ 116 is essentially identical to the list in FAC ¶ 95, describing actions allegedly taken by Nationstar that were "deceptive business practices" for purposes of the UCL claim. In addition, plaintiff asserts that Nationstar breached its duty of skill and care to plaintiff by "refusing to notify plaintiff of his foreclosure prevention alternatives before instituting foreclosure proceedings and recording the Notice of Default and by failing to consider plaintiff for foreclosure prevention alternatives after being informed of plaintiff's material change in financial circumstances." FAC ¶ 117.

Plaintiff claims that as a result of "defendants' negligence," he has suffered from "substantial arrearages, which include additional and unnecessary interest and fees," "an adverse effect on his credit score," "the loss of equity in his home," and "being precluded from his rights and protections under the [HBOR]." FAC ¶ 118.

The elements of negligence in California are: (1) defendant had a legal duty to use due care towards the plaintiff; (2) the defendant breached that duty; and (3) the breach was the proximate or legal cause of (4) the resulting injury. Ladd v. Cty. of San Mateo, 12 Cal. 4th 913, 917-18 (1996). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." Vasquez v. Residential Invs., Inc., 118 Cal. App. 4th 269, 278 (2004).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal.App.3d 1089, 1096 (1991). However, courts sometimes apply the so-called Biakanja factors to determine whether a duty is owed under a narrow exception to the general rule. See, e.g., Alvarez v. BAC Home Loans Servicing, L.P., 228 Cal. App. 4th 941, 945-46 (2014). These factors are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree

of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. See Biakanja v. Irving, 49 Cal. 2d 657, 650 (1958).

Nationstar argues that the negligence cause of action should be dismissed for failure to state a claim. In the May 12, 2017 order, the court dismissed the negligence claim with leave to amend, directing plaintiff to allege facts showing that Nationstar owed him a duty of care, sufficient to show that this alleged duty falls within the narrow exception to the general rule that a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. Order at 5.

Nationstar contends that contrary to this directive, plaintiff's amended negligence cause of action is substantively identical to the negligence claim asserted in the original complaint. See, e.g., Orig. Cplt ¶¶ 140-154; FAC ¶¶ 109-122. Once again, Nationstar argues, plaintiff fails to allege any facts demonstrating that Nationstar breached any duty of care owed to him. And, Nationstar contends, even if the FAC alleged any such duty (which it does not), there are no allegations of breach and/or resulting damages. Nationstar asserts that the allegations discernable from the FAC allege, at most, purported statutory violations which are now moot, because the FAC does not adequately plead claims under those statutes. Nationstar argues that because plaintiff again fails to plead negligence on the part of Nationstar, this cause of action must be dismissed.

In opposition, plaintiff argues that the negligence claim is adequately pled. With regard to whether "defendants" owed him a duty, plaintiff asserts that under Alvarez, while a lender may not owe a duty to offer or approve a loan modification, a lender does owe a borrower a duty to exercise reasonable care in the review of the borrower's loan modification applications once the lender agrees to review for a modification. In addition, plaintiff asserts, under Lueras, a lender has a duty not to make material misrepresentations about the status of an application for a loan modification or about the

24

date, time, or status of a foreclosure.

Plaintiff contends that he has properly pled a claim of negligence against Nationstar, and that the claim is supported by the allegations in FAC ¶ 116 that Nationstar breached its duty to plaintiff by violating the HBOR, and by various acts of "deception." He contends that the question whether defendants owed him a duty of care in this case is governed by the Biakanja factors, which he lists, but does not discuss or explain how they apply here.

Plaintiff reiterates that the proper way to remedy alleged HBOR violations such as those asserted in the FAC (including in the negligence claim) is to rescind the Notice of Default, but that Nationstar has not done that in this case, and so he argues that the HBOR claims are still viable. In addition, plaintiff contends that Nationstar breached its duty to him by informing him that his loan modification was denied, and then that it was conditionally approved, which was not true, "all as set forth in the FAC." This appears to be a reference to the 2009 request to BofA for a loan modification.

The court finds that the motion must be GRANTED. Plaintiff fails to state a claim for negligence because he has not alleged any facts demonstrating the existence of a duty, breach, or damage. In amending the complaint, plaintiff has not complied with the court's directive regarding the pleading of the negligence claim. See Order at 5 (citing Nymark, 231 Cal. App. 3d at 1095-96).

Instead, plaintiff re-alleges, almost verbatim from the original complaint, that Nationstar had a duty to "exercise reasonable care and skill to maintain proper and accurate loan records," and to "discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records," including (a) "[k]eeping an accurate accounting of [p]laintiff's mortgage payments, credits, and debits;" (b) "[d]isclosing to [p]laintiff the status of any foreclosure actions taken by [d]efendants;" (c) "[r]efraining from taking any action against [p]laintiff that they [sic] did not have the legal authority to do;" (d) [p]roviding [p]laintiff with all relevant information regarding the Loan;" and (e) "[m]aintaining proper documentation of client status of legal holds and

restrictions on communication with clients." <u>See</u> FAC ¶ 110; Orig. Cplt ¶ 141. However, plaintiff pleads no facts showing that Nationstar in fact owed him any of these "duties," or that an exception should be made to the general rule articulated in <u>Nymark</u>.

Nor does plaintiff allege facts showing that Nationstar breached any duty of care owed to him, or that he suffered any resulting damages. California courts have differed in their application of the <u>Biakanja</u> factors in the home loan modification context. In <u>Lueras</u>, the court noted that a loan modification is the renegotiation of loan terms, which falls within the scope of a lending institution's conventional role as a lender of money. <u>Id.</u>, 221 Cal. App. 4th at 67. The court found that the <u>Biankanja</u> factors did not support finding a duty of care because the harm – being unable to make payments on the loan – was a result of the borrower's default on the loan, and was not "closely connected to the lender's conduct" as long as the lender had not placed the borrower in the position that created the need for the loan modification in the first place. <u>Id.</u> Thus, the <u>Lueras</u> court found that the lender had no common law duty under California law "to offer or approve a loan modification." <u>Id.</u>

In <u>Alvarez</u>, the court concluded that the lender did have a common law duty to exercise reasonable care in the review of the plaintiffs' loan modification applications once the lender had agreed to consider the applications. <u>Id.</u>, 228 Cal. App. 4th at 948-49. The plaintiffs alleged that the lender improperly handled their loan modifications and that the lender's delay in processing the loan modification deprived them of "the opportunity to seek relief elsewhere." <u>Id.</u> at 951. The court found that "[t]he transaction was intended to affect the plaintiffs" and that it was foreseeable that failing to timely and carefully process the loan modification applications could result in significant harm to plaintiffs. <u>Id.</u> The court concluded that the <u>Biankanja</u> factors supported finding a duty of care. <u>Id.</u> at 952.

Federal courts disagree as to whether <u>Lueras</u> or <u>Alvarez</u> is more persuasive. <u>Compare</u> Romo v. Wells Fargo Bank, N.A., 2016 WL 324286, at *9 (N.D. Cal. Jan. 27, 2016) (stating that "most federal district courts have followed <u>Alvarez</u>"), <u>with</u> Marques v.

Wells Fargo Bank, N.A., 2016 WL 5942329, at *7 (N.D. Cal. Oct. 13, 2016) ("A growing

number of courts that have addressed this issue since Lueras and Alvarez have adopted

the holding in Lueras in finding that a mortgage servicer does not owe borrowers a duty

of care in processing a residential loan modification").

The recent trend among federal district courts in California appears to be more in

the direction of adopting the position of the Lueras court. See Newman v. Bank of N.Y.

Mellon, 2017 WL 1831940, at *11 (E.D. Cal. May 8, 2017) (collecting cases); Shupe v.

Nationstar Mrtg. LLC, 213 F.Supp. 3d 597, 604-05 (E.D. Cal. Jan. 31, 2017) (same);

Harris v. Wells Fargo Bank, 2016 WL 3410161, at *6 (C.D. Cal. June 15, 2016).

In addition, even though it has yet to issue a "reported" decision, the Ninth Circuit

also appears to find the Lueras line of cases more persuasive. See Anderson v.

Deutsche Bank Nat'l Trust Co. Ams., 649 Fed. Appx. 550, 552 (9th Cir. 2016) (mem.)

(citing Lueras, 221 Cal. App. 4th at 68); Badame v. J.P. Morgan Chase Bank, N.A., 641

Fed. Appx. 707, 709-10 (9th Cir. 2016) (mem.) quoting Lueras, 221 Cal. App. 4th at 68));

Deschaine v. IndyMac Mortg. Servs., 617 Fed. Appx. 690, 693 (9th Cir. 2015) (mem.)

(quoting Lueras, 221 Cal. App. 4th at 68).

However, the court need not decide whether Lueras or Alvarez is more

persuasive. Even assuming that Alvarez is correct that a lender owes a borrower a duty

of care in some circumstances, plaintiff has not shown that those circumstances exist

here. Regardless of what may or may not have happened while BofA was servicing

plaintiff's Loan – during which time plaintiff ceased making payments on the Loan – the

allegations in the FAC and the documents attached to the FAC and the original complaint

show that plaintiff applied for a loan modification, that the application was denied for

reasons clearly articulated by Nationstar, and that no foreclosure has occurred to date .

By contrast, the plaintiffs in Alvarez alleged that the lender had failed to review the

plaintiffs' loan modification application in a timely manner, foreclosed on the plaintiffs'

property while the plaintiffs were still under consideration for a HAMP modification, relied

on incorrect information in handling plaintiffs' application, and falsely advised plaintiffs

that no documents had been submitted for review.  See id., 228 Cal. App. at 945.

The allegations discernable from the FAC at most relate to purported statutory (HBOR) violations that are now moot.  The FAC pleads no facts plausibly showing that plaintiff's circumstances were similar to those of the plaintiffs in Alvarez – or that Nationstar exceeded "the scope of its conventional role as a mere lender of money" such that it owed plaintiff a duty of care.  Given the absence of any facts relating to cognizable conduct on the part of Nationstar which could give rise to plaintiff's claim that Nationstar breached a duty of care to him, the court finds that this claim must be dismissed.

### 5.    Negligent Misrepresentation

The fifth cause of action for negligent misrepresentation alleges that Nationstar "fraudulently misled" plaintiff to believe that Nationstar was going to work with him to obtain a long-term solution for his Loan or review it for modification, FAC ¶ 124; that plaintiff was "fraudulently misled into believing that a long term solution to keep him in the home was being worked on and a sale date was not, in fact, pending and [he] so relied on the representations from Ms. Karp indicating that she was the [assigned SPOC], FAC ¶ 125; and that plaintiff "reasonably relied" on Nationstar reviewing and responding to the loan modification application, and that he "continued to spend valuable money, time, and efforts in attempting to modify the Loan, which [he] had submitted, only in an effort to obtain a loan modification or other 'resolution' and long-term solution[,]" FAC ¶ 126.

Plaintiff asserts that Nationstar representatives "asserted facts that were not true, or concealed true facts, having no reasonable ground for believing them to be true, intending [p]laintiff to rely upon the assertions as to the review of their [sic] loan modification application."  FAC ¶ 128.  He alleges that Nationstar acted "knowingly and maliciously to form and further the common plan and scheme to defraud [p]laintiff and allow the home to be sold improperly" and that its conduct "constutes fraud, deceit, and false promises made without the intent to perform, and intentional misrepresentation, among other wrongs."  FAC ¶¶ 130-131.

Nationstar argues that this cause of action must be dismissed for failure to state a

United States District Court
Northern District of California

claim. The elements of a cause of action for negligent misrepresentation are (1) a misrepresentation, (2) with absence of reasonable grounds for believing the alleged misrepresentation to be true, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage. Bock v. Hansen, 225 Cal. App. 4th 215, 231 (2014). As is true with negligence, liability for negligent misrepresentation rests upon the existence of a legal duty, imposed by contract, statute, or otherwise, owed by the defendant to the injured person. Id. at 228.

In addition, in federal court, a claim of negligent misrepresentation must be pled in accordance with the particularity requirements of Rule 9(b). See Neilson v. Union Bank of Cal., N.A., 290 F.Supp. 2d 1101, 1141 (C.D. Cal. 2003). That is, the facts supporting the alleged misrepresentation be pled with specificity, and conclusory allegations are insufficient. Id. (citing Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989)).

In the order dismissing the original complaint, the court directed that in amending this claim, plaintiff must allege particularized facts showing the "who, what, when, where, and how" of the alleged negligent misrepresentation, and that it was not sufficient for plaintiff, as in the original complaint, to allege that Nationstar "fraudulently misled him" into believing it would work "to obtain a long term solution for [p]laintiff's Loan or at least properly review them [sic] for a loan modification" or that plaintiff had been "fraudulently misled into believing that a long term solution to keep him in his home was being worked out and that a sale date was not, in fact pending." See Order at 6-7.

Here, Nationstar argues, in amending this cause of action in the FAC, plaintiff has not corrected the deficiencies of the original complaint – in particular, he has not alleged fraud with particularity and has not identified a duty that was owed to him. Rather, he has simply repeated, almost verbatim, the allegations in the claim that was dismissed by the court for failure to state a claim.

In opposition, plaintiff contends that the FAC adequately states a claim of negligent misrepresentation. He asserts that the FAC alleges that Nationstar fraudulently

1   led him to believe that "they" would work with him to obtain a long term solution for his

2   loan, or at least properly review him and the sale was not pending (citing FAC ¶ 125).

3   Plaintiff claims that "[a]s a result" he "continued to spend time money and efforts toward

4   modifying the loan."

5        Plaintiff points to FAC ¶¶ 34-35, where he alleges after receiving the November 6,

6   2015 Notice of Default in the mail, he called Nationstar on December 10, 2015, and

7   talked with "Faye" who told him that "the records" showed that a loan modification

8   application was "submitted" and "under review" – referring to the application submitted to

9   BofA – and that there were no documents showing if it was approved or denied.  FAC

10  ¶ 34.  Plaintiff asserts that on December 15, 2015, he called Nationstar and spoke to

11  "Monique" who informed him there had been no response from "escalation," and that on

12  January 5, 2016, he called and spoke to "Icy" who advised that the loan modification

13  application had been denied."  FAC ¶ 35.

14       Plaintiff claims that these allegations show that he contacted Nationstar between

15  December 10, 2015 to January 5, 2016, as to the status of his loan modification review,

16  but did not receive information or documents showing that it was approved or denied

17  "despite the fact that Nationstar had led [him] to believe there was a long term solution

18  available."  He adds that Nationstar made these "representations" without a reasonable

19  ground for believing them to be true under these circumstances, and that Nationstar

20  made "each material misrepresentation" with the intent to induce plaintiff's reliance on

21  "the fact misrepresented," and to deceive plaintiff.  He adds that Nationstar owes him a

22  duty under "common law, California statutory laws, and Federal rules and regulations,"

23  but does not elaborate.

24       The court finds that the motion to dismiss this cause of action must be GRANTED.

25  First, the pleading does not satisfy the requirements of Rule 9(b).  The FAC includes

26  vague allegations essentially suggesting that Nationstar falsely represented that plaintiff

27  would receive a loan modification, and misled him into believing that it was going to "work

28  with him to obtain a long term solution" for his Loan or "at least properly review for a loan

30

modification." See FAC ¶ 124. The implication is that he was told he would receive a loan modification, although he pleads no facts to support such a claim. The fact that he requested a loan modification and the fact that he was being evaluated for a loan modification do not translate into an affirmative representation by Nationstar that he would receive a loan modification.

Plaintiff also appears to be claiming that his loan modification application was negligently handled by Nationstar. However, he has not alleged facts showing that Nationstar owed him a legal duty of care. It is true that lenders generally "owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale." Lueras, 221 Cal. App. 4th at 68. This is distinct, however, from a claim that a modification application was negligently handled or considered. Here, plaintiff has not alleged any facts showing that Nationstar made any negligent misrepresentations of a past or existing material fact.

**CONCLUSION**

In accordance with the forgoing, the court GRANTS Nationstar's motion to dismiss. Because the court finds that further amendment would be futile, the dismissal is with prejudice.[3]

**IT IS SO ORDERED.**

Dated: September 22, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge

_____

[3] The original complaint named Nationstar and NBS Default Services ("NBS") as defendants. NBS has not responded to the complaint, but Nationstar asserted in the Notice of Removal that NBS had filed a declaration of non-monetary status, that plaintiff had not objected to the declaration, and that NBS "does not expect to participate in this matter any further." In the May 12, 2017 Order, the court noted that at the May 10, 2017, hearing, plaintiff's counsel appeared to agree that plaintiff was not pursuing claims against NBS. Accordingly, the court finds that NBS should be dismissed from the case.